**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>DAVIDSON LEE CHARLEMAGNE, SASHA )<br>CHARLEMAGNE and DARIN RICHARDSON, )<br>)<br>**Defendants.** )<br>_____) | Criminal Action No. 2024-0008 |

**Attorneys:**
**Evan Rikhye, Esq.**
St. Croix, U.S.V.I.
**Yasir Sadat, Esq.**
St. Thomas, U.S.V.I.
    *For the United States*

**David J. Cattie, Esq.**
St. Thomas, U.S.V.I.
    *For Defendant Davidson Lee Charlemagne*

**Pamela L Colon, Esq.**
St. Croix, U.S.V.I.
    *For Defendant Sasha Charlemagne*

**Darren John-Baptiste, Esq.**
St. Thomas, U.S.V.I.
    *For Defendant Darin Richardson*

**MEMORANDUM OPINION**

**Lewis, District Judge**

    THIS MATTER comes before the Court on Defendant Davidson Lee Charlemagne's Motion to Sever and Memorandum in support thereof (Dkt. Nos. 51, 52); Defendant Sasha Charlemagne's Motion to Sever and Memorandum in support thereof (Dkt. Nos. 53, 54); Defendant Darin Richardson's Motion to Sever (Dkt. No. 55); the Government's Omnibus

Opposition thereto (Dkt. No. 56); and Defendants' Replies (Dkt. Nos. 58, 62, 63). For the reasons discussed below, the Court will grant the Motions to Sever.

## I. BACKGROUND

On June 11, 2024, the Government filed an Indictment against Defendants Davidson Lee Charlemagne, Sasha Charlemagne and Darin Richardson ("Richardson"). (Dkt. No. 1). The Indictment alleges that, after Hurricanes Irma and Maria in 2017, the Federal Emergency Management Agency sent large consignments of wood to the Virgin Islands to be used for the rebuilding of commercial and residential buildings in the Territory. *Id.* ¶¶ 1-2. The Virgin Islands Housing Finance Authority ("VIHFA")—which acquired control of the wood—stacked the St. Croix consignment of wood at the Sunshine Mall. *Id.* ¶ 2. In May 2020, after the owner of Sunshine Mall requested the removal of the woodpile, VIHFA issued a public request for proposals ("RFP") seeking qualified entities to submit bids for a contract for the management and storage of both the St. Croix and St. Thomas woodpiles ("the Woodpile Contract"). *Id.* ¶¶ 3-4. VIHFA intended to use funds provided through the United States Department of Housing and Urban Development ("HUD") to pay for the Woodpile Contract. *Id.* ¶ 4.

The Indictment further alleges that after the RFP was issued, Davidson Charlemagne contacted Individual One and proposed that Individual One's company—ISG—submit a bid for the Woodpile Contract that included Charlemagne's company—D&S Trucking—as the subcontractor. *Id.* ¶¶ 5-8. Under this proposal, D&S Trucking would perform essentially all of the work required under the terms of the Woodpile Contract and receive the vast majority of the proceeds from VIHFA. *Id.* ¶ 8. Individual One agreed to this arrangement and, on behalf of ISG, submitted a bid for $2,993,500 for the Woodpile Contract over a three-year period, noting in the bid the proposed role of D&S Trucking as the subcontractor. *Id.* ¶ 9.

2

The Indictment alleges that there were certain problems with ISG and D&S Trucking's bid. First, it is alleged that the cost estimates for labor were vastly inflated and above the labor costs estimated by VIHFA. *Id.* ¶¶ 9-10. Second, it is also alleged that Davidson Charlemagne falsely certified that he had sufficient liability insurance to be a subcontractor on the Woodpile Contract. *Id.* ¶ 11. Third, it is further alleged that Davidson Charlemagne failed to disclose that he was employed as Director of Maintenance for the Virgin Islands Department of Education ("VIDE") and that he planned to obtain rent-free space for the St. Croix woodpile at a property owned by VIDE. *Id.* ¶ 12.

According to the Indictment, Richardson was the Chief Operating Officer of VIHFA with total authority over all procurement and contract related decisions. *Id.* ¶ 17. VIHFA convened a Bid Evaluation Committee led by Richardson to review the bids submitted for the Woodpile Contract. *Id.* ¶ 17. Allegedly acting under Richardson's leadership, the Bid Evaluation Committee recommended awarding the Woodpile Contract to ISG, with D&S Trucking as the subcontractor. *Id.* ¶ 20. On or about January 27, 2021, Richardson formally awarded the Woodpile Contract to ISG and D&S Trucking. *Id.* ¶ 21.

Pursuant to the Woodpile Contract, ISG and D&S Trucking were originally set to receive $2,993,500 from VIFHA for the three-year period beginning February 1, 2021 through January 31, 2024, to be paid in monthly installments. *Id.* ¶¶ 21-22. On June 6, 2021, Richardson allegedly increased the value of the Woodpile Contract by over $1,000,000 due to a purported extension of the length of the contract term, although it is alleged that no such extension actually occurred. *Id.* ¶ 30. At this time, the St. Croix woodpile still remained at Sunshine Mall. *Id.* ¶ 24. In August 2021, D&S Trucking moved the St. Croix woodpile from Sunshine Mall to Henderson Elementary School, with Davidson Charlemagne arranging rent-free storage at the school through his position

3

as Director of Maintenance for VIDE. *Id.* ¶¶ 23-24. That same month, it is alleged that Richardson again increased the value of the Woodpile Contract by over $275,000 due to a purported need to compensate D&S Trucking for the move of the St. Croix woodpile. *Id.* ¶ 31. Then, in October 2021, Richardson allegedly increased the value of the Woodpile Contract once again—this time by over $100,000. *Id.* ¶ 32.

On February 7, 2022, Richardson—still serving as the Chief Operating Officer of VIHFA—allegedly received a $107,000 payment from Individual One, the owner of ISG. *Id.* ¶¶ 33-34. In an interview with the HUD Office of Inspector General on February 14, 2023, Richardson acknowledged that he had been pursuing a business relationship with Individual One during the bid process for the Woodpile Contract. *Id.* ¶ 34. During this interview, Richardson claimed that he recused himself from all VIHFA matters related to ISG. *Id.* ¶ 34. However, the Indictment alleges that this claim was false, as Richardson had been instrumental in ensuring that ISG was awarded the Woodpile Contract and had never executed any document with HUD or VIHFA to formally recuse himself from the matter. *Id.* ¶ 35.

The Indictment alleges that, during its performance of the Woodpile Contract, D&S Trucking significantly overbilled VIHFA for labor costs. *Id.* ¶¶ 25-27. This allegedly included, *inter alia*, a payment of over $67,000 to Sasha Charlemagne, who, according to the Virgin Islands Department of Labor, was not an employee of D&S Trucking and did not receive a salary therefrom. *Id.* ¶ 26. The Indictment further alleges that both Davidson Charlemagne and Sasha Charlemagne (collectively, "the Charlemagnes") utilized federal funds collected from the Woodpile Contract to pay for a variety of personal and business expenditures, including credit card payments, car loans, bank lines of credit, equipment purchases, cash transfers to themselves, and fireworks. *Id.* ¶ 28.

In January 2024, the Woodpile Contract—still held by ISG and D&S Trucking—was extended by VIHFA for an additional three-year term. *Id.* ¶ 36. Meanwhile, the woodpiles in St. Croix and St. Thomas allegedly remain almost entirely unused, with the wood exposed to the elements for over three years, despite the fact that homes across the Territory remain in need of repairs from damages caused by Hurricanes Irma and Maria. *Id.* ¶¶ 37-38.

The Indictment charges all three Defendants with crimes generally related to the Woodpile Contract. Davidson Charlemagne is charged with three Counts: Fraud Concerning Programs Receiving Federal Funds (Count I); Wire Fraud (Count II); and Money Laundering Conspiracy (Count III). *Id.* ¶¶ 39-42. Sasha Charlemagne is charged with one Count: Money Laundering Conspiracy (Count III). *Id.* ¶¶ 41-42. Richardson is charged with two Counts: Criminal Conflict of Interest (Count IV) and Material False Statement (Count V). *Id.* ¶¶ 43-44.

All three Defendants have moved for severance pursuant to Fed. R. Crim. P. 8(b). (Dkt. Nos. 51, 53, 55). Specifically, Defendants seek to sever Richardson's case from the Charlemagnes' case, such that the action against Richardson proceeds independently from the action against the Charlemagnes. (Dkt. No. 51 at 1, Dkt. No. 53 at 1, Dkt. No. 55 at 1).

Defendants argue that severance is warranted because the Government has alleged that the Charlemagnes and Richardson committed their crimes independently of each other, rather than participating in a joint conspiracy. (Dkt. No 52 at 1-2, Dkt. No. 54 at 1-2, Dkt. No. 55-1 at 1-2). The Charlemagnes assert that the Government has not alleged that they knew of, authorized, or participated in any way in the alleged $107,000 payment that Richardson received from Individual One, or that the payment had anything to do with D&S Trucking. (Dkt. No. 52 at 7, Dkt. No. 54 at 7). The Charlemagnes further argue that the Indictment does not allege that they encouraged Richardson to make the alleged false statement or knew that he was going to make this statement.

5

(Dkt. No. 52 at 8, Dkt. No. 54 at 8). As for Richardson, he maintains that the Government has not alleged that he knew of the allegedly unlawful transactions made by the Charlemagnes or that he awarded the Woodpile Contract to D&S Trucking to further the Charlemagnes' allegedly unlawful purpose. (Dkt. No. 55-1 at 6). While Defendants acknowledge that Individual One is connected with both the allegations against the Charlemagnes and the allegations against Richardson, they contend that the existence of a single common participant in separate schemes is not a sufficient basis for joinder under Rule 8(b). (Dkt. No. 52 at 5-6, Dkt. No. 54 at 5-6, Dkt. No. 55-1 at 6).

The Government opposes severance. (Dkt. No. 56). The Government acknowledges that the Charlemagnes and Richardson were charged with separate offenses and that the Indictment does not allege that they participated in a conspiracy. *Id.* at 2. However, the Government asserts that joinder can be proper even in the absence of a conspiracy charge where the defendants participated in the same series of acts or transactions. *Id.* at 6. Here, the Government contends that the requisite transactional nexus exists because all three Defendants were engaged in a common illicit enterprise to defraud the federal government in connection with the Woodpile Contract. *Id.* at 7.

## II.    APPLICABLE LEGAL PRINCIPLES

Federal Rule of Criminal Procedure 8(b) permits the joinder of two or more defendants in an indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Thus, joinder of multiple defendants under Rule 8(b) is permissible only when there exists a "transactional nexus" between the offenses charged. *United States v. Lacerda*, 958 F.3d 196, 224 (3d Cir. 2020) (quoting *United States v. Irizarry*, 341 F.3d 273, 287 n.4 (3d Cir. 2003)); *see also United States v. Jimenez*, 513 F.3d 62, 82-83 (3d Cir. 2008) (internal quotation omitted) ("It is not

enough that defendants are involved in offenses of the same or similar character; there must exist a transactional nexus in that the defendants must have participated in the same act or transaction, or in the same series of acts or transactions.").

"A good-faith allegation of conspiracy will generally supply the requisite transactional nexus to join substantive offenses against multiple defendants." *United States v. Coles*, No. 1:16-CR-212, 2021 U.S. Dist. LEXIS 17041, at *46 (M.D. Pa. Jan. 29, 2021); *see also United States v. Green*, 563 F. App'x 913, 916 (3d Cir. 2014) (explaining that the transactional nexus may be established by either "a formal conspiracy count" or an allegation that "the defendants are liable . . . as co-conspirators"); *United States v. Webb*, No. 15-cr-252, 2020 U.S. Dist. LEXIS 203431, at *9 (E.D.N.Y. Nov. 1, 2020) ("[A] racketeering conspiracy charge . . . serves here as the common plan and purpose between Defendants and the crimes with which they are charged."). Nonetheless, "joinder may still be proper in the absence of a conspiracy count covering the time period for every substantive offense" where the separate offenses "'arose directly' from [] participation in a common illicit enterprise." *United States v. Walker*, 657 F.3d 160, 169-70 (3d Cir. 2011) (quoting *United States v. Riley*, 621 F.3d 312, 334 (3d Cir. 2010)); *see also Green*, 563 F. App'x at 916 (3d Cir. 2014) (finding joinder was warranted because "the circumstances underlying the three incidents indicate they were part of a common scheme on the part of Green and his co-defendants").

Generally, "the propriety of joinder is determined by examining the allegations in the indictment." *United States v. Alford*, No. 4:22-CR-00010, 2024 U.S. Dist. LEXIS 54328, at *3 (M.D. Pa. Mar. 26, 2024). However, courts "may look beyond the face of the indictment in limited circumstances, e.g. where pre-trial documents clarify the factual connections between the counts." *United States v. Heilman*, 377 F. App'x 157, 202 (3d Cir. 2010) (citing *United States v. McGill*,

7

964 F.2d 222, 242 (3d Cir. 1992)); *see also United States v. Weiner*, 2024 U.S. Dist. LEXIS 6735, at *24 (S.D.N.Y. Jan. 11, 2024) ("There is a circuit split concerning the issue of whether a court can look beyond the indictment in determining whether joinder is appropriate under Rule 8(b). The D.C. Circuit, the Third Circuit, and the Eleventh Circuit have held that courts can consider material outside an indictment.").

"[T]here is a strong preference to try defendants named in a single indictment together in order to 'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *Riley*, 621 F.3d at 334 (quoting *Jimenez*, 513 F.3d at 82). As such, "[t]he movant bears the burden of establishing improper joinder pursuant to Rule 8(b)." *United States v. Gadsden*, No. 09-305, 2012 U.S. Dist. LEXIS 149338, at *12 (W.D. Pa. Oct. 17, 2012). "But where defendants are improperly joined, severance is mandatory." *United States v. Raheja*, No. 1:19-cr-559, 2022 U.S. Dist. LEXIS 8039, at *27-28 (N.D. Ohio Jan. 14, 2022).

### III.    DISCUSSION

Defendants bear the burden of demonstrating that severance is warranted. *Gadsden*, 2012 U.S. Dist. LEXIS 149338, at *12. Defendants contend that the action against Richardson must be severed from the action against the Charlemagnes because they are not alleged to have participated in the same series of acts or transactions constituting an offense. (Dkt. No. 52 at 5, Dkt. No. 54 at 5, Dkt. No. 55 at 5). In support of this contention, Defendants assert that Richardson and the Charlemagnes are charged with entirely separate sets of offenses and that they are not collectively charged with a conspiracy. (Dkt. No. 52 at 3, Dkt. No. 54 at 3, Dkt. No. 55 at 3-4). Further, Defendants argue that the Indictment does not "allege that the Charlemagnes and Richardson had

any common scheme or plan" that would otherwise warrant joinder. (Dkt. No. 55 at 6); *see also* (Dkt. No. 52 at 6, Dkt. No. 54 at 6).

The Government acknowledges that the Indictment charges Richardson with an entirely separate set of offenses from the Charlemagnes and does not charge Richardson and the Charlemagnes together with a conspiracy. (Dkt. No. 56 at 2). Nonetheless, the Government maintains that joinder is appropriate here because Richardson and the Charlemagnes were engaged in "a common illicit enterprise to defraud HUD in connection with the 2020 woodpile storage and management contract." *Id.* at 7.

A number of considerations are relevant when determining whether multiple defendants were engaged in a common illicit enterprise such that their separate offenses constitute "the same series of acts or transactions." Fed. R. Crim. P. 8(b). One such consideration is "mutual awareness" of the separate offenses—that is, whether each defendant was aware of the other's unlawful activity. *See United States v. Rajaratnam*, 753 F. Supp. 2d 299, 308-09 (S.D.N.Y. 2010) (finding that joinder of two defendants was improper because one defendant did not know about the other's separate unlawful activity); *United States v. Chierchio*, No. 20-CR-306, 2022 U.S. Dist. LEXIS 30758, at *12 (E.D.N.Y. Feb. 22, 2022) (finding that no common scheme existed to warrant joinder because, *inter alia*, there was no "allegation that each of the lottery co-conspirators were even aware of the extortion scheme"); *United States v. Ohle*, 678 F. Supp. 2d 215, 225 (S.D.N.Y. 2010) ("Knowledge of the other conspiracy is not required, but it is an indicator of whether or not there is a common scheme or purpose."). Other relevant considerations include factual connections between the offenses, the similarity in the nature of the offenses, shared participants in the offenses, and temporal proximity between the offenses. *See Coles*, 2021 U.S. Dist. LEXIS 17041, at *45, 48-49 (explaining that "[t]he nature, timing, and location of the separate offenses" are relevant

9

considerations in the transactional nexus analysis, and finding that "there must be some material, substantive relationship between the joined counts" to sustain joinder); *see also Green*, 563 F. App'x at 916-17 (finding that a transactional nexus existed between multiple offenses because the offenses "were perpetrated by the same defendants in a similarly violent nature and took place in the same area of the state" while occurring approximately a month apart); *United States v. Avila*, 610 F. Supp. 2d 391, 395 (M.D. Pa. 2009) (explaining that the transactional nexus depends on, *inter alia*, "the temporal proximity between the offenses").

After a review of these considerations, the Court concludes that Defendants have met their burden of demonstrating that the Indictment does not sufficiently allege that the Charlemagnes and Richardson were engaged in a common illicit enterprise for purposes of Rule 8(b). Rather, the allegations in the Indictment describe two separate sets of offenses or schemes. Thus, the Charlemagnes' alleged scheme and Richardson's alleged scheme are improperly joined.

The Charlemagnes' scheme allegedly began when Davidson Charlemagne approached Individual One with the proposal to bid on the Woodpile Contract. (Dkt. No. 1 ¶¶ 7-8). Individual One agreed and submitted a bid to VIHFA on behalf of ISG and D&S Trucking, which allegedly contained "vastly inflated" labor cost estimates prepared by Davidson Charlemagne. *Id.* ¶ 9-10. Davidson Charlemagne also allegedly submitted a false certification regarding insurance and failed to disclose pertinent information regarding rent-free storage of the wood that he planned to obtain through his employment with VIDE. *Id.* ¶ 11-12. After VIHFA awarded the contract to ISG and D&S Trucking, Davidson Charlemagne allegedly began overbilling VIHFA for labor costs, *id.* ¶¶ 25-27, and both Charlemagnes allegedly began utilizing these criminally derived proceeds to unlawfully enrich themselves, *id.* ¶¶ 41-42.

Richardson's alleged scheme apparently arises out of a business relationship he allegedly was pursuing with Individual One during the bid process for the Woodpile Contract. *Id.* ¶¶ 34, 43. Richardson allegedly was intimately involved in the bid process and instrumental in ensuring that ISG was awarded the Woodpile Contract. *Id.* ¶ 35. Then, in February 2022, Individual One allegedly paid Richardson $107,000. *Id.* ¶ 33. Richardson subsequently participated in an interview with the HUD Office of Inspector General in February 2023, where he allegedly falsely claimed that he had recused himself from all VIHFA matters related to ISG, in light of the business relationship he had been pursuing with Individual One, the owner of ISG. *Id.* ¶ 34.

As an initial matter, the Indictment does not allege that the Charlemagnes and Richardson possessed "mutual awareness" of each other's schemes. Richardson is not alleged to have known anything about the Charlemagnes' scheme. Specifically, the Indictment does not allege that Richardson knew that Davidson Charlemagne submitted allegedly false documents to VIHFA or that he allegedly overbilled VIHFA for labor costs. Further, the Indictment does not allege that Richardson knew that the Charlemagnes used the allegedly criminally derived proceeds to enrich themselves. Similarly, neither of the Charlemagnes are alleged to have known anything about Richardson's scheme. The Indictment does not allege that the Charlemagnes knew about Richardson's business relationship with Individual One, the payment that Richardson allegedly received from Individual One, or that Richardson allegedly made a false statement regarding the business relationship.

"Mutual awareness" exists where both defendants know of the other's scheme. *See Rajaratnam*, 753 F. Supp. 2d at 309. In *Rajaratnam*, one defendant (Rajarathnam) knew of both schemes. The other defendant (Chiesi) knew about the scheme that he was involved in but knew nothing of Rajarathnam's scheme. Thus, there was no "mutual awareness" between Rajarathnam

11

and Chiesi—even though Rajarathnam knew of both schemes—because Chiesi knew only about his own scheme. *Id.* at 308-309.

Here, based on the allegations in the Indictment, Defendants appear to be even further from mutual awareness than the defendants in *Rajarathnam* because neither set of Defendants are alleged to have known about both schemes. According to the allegations in the Indictment, the Charlemagnes knew about their offenses and Richardson knew about his offenses. However, there is no allegation that the Charlemagnes knew of Richardson's offenses or vice versa. This absence of mutual awareness strongly suggests that the Charlemagnes and Richardson did not engage in a common illicit enterprise. *See United States v. Menashe*, 741 F. Supp. 1135, 1138 (S.D.N.Y. 1990) (finding joinder was inappropriate due to a lack of a common scheme and explaining that one defendant's "plan cannot be called 'common', since he is the only one alleged to be aware of it").

This conclusion is bolstered by the lack of any allegation in the Indictment of a factual connection between the alleged schemes, together with the varying nature of the offenses charged in the Indictment and the lack of common participants. First, as noted above, the Indictment describes two separate schemes—one allegedly orchestrated by the Charlemagnes and the other allegedly orchestrated by Richardson. Significantly, the allegations in the Indictment regarding the Charlemagnes are largely separated from those allegations regarding Richardson. *See generally* (Dkt. No. 1). While the Government offers the conclusory assertion that the "different component parts" of the schemes in which Defendants engaged were part of a "common illicit enterprise," (Dkt. No. 56 at 3), the Indictment does not allege any factual connection between these "different component parts" from which the Court can conclude that the "components" were part of a

12

common illicit operation.[1] As such, the Government is left with merely a narrative or descriptive connection between the Charlemagnes' alleged offenses and Richardson's alleged offenses, which is insufficient to sustain joinder. *See Coles*, 2021 U.S. Dist. LEXIS 17041, at 48-49 (cleaned up) (explaining that "there must be some material, substantive relationship between the joined counts, rather than a purely narrative or descriptive one" and granting motion to sever because, *inter alia*, the offenses lacked a "substantive connection"); *see also United States v. Rallo*, No. 3:20-CR-00086, 2022 U.S. Dist. LEXIS 164680, at *8 (D. Conn. Sep. 13, 2022) (denying request for joinder where there was "no factual basis which connects the charge against [one defendant] with the charge against [the other defendant]").

Second, the Indictment alleges that the Charlemagnes and Richardson committed offenses of an entirely different nature. Davidson Charlemagne allegedly defrauded VIHFA and HUD, and both Charlemagnes allegedly conspired to launder money that they received through this fraud. (Dkt. No. 1 ¶¶ 39-42). Richardson, on the other hand, allegedly had a criminal conflict of interest and made a material false statement to cover up that conflict of interest. *Id.* ¶¶ 43-44. The Charlemagnes are not accused of having participated in a criminal conflict of interest or making any false statement, and Richardson is not accused of committing any fraud or money laundering. The varying natures of these offenses further weighs against finding that the Charlemagnes and Richardson engaged in a common illicit enterprise. *See United States v. Homick-Van Berry*, No. 04-269, 2005 U.S. Dist. LEXIS 9371, at *14 (D.N.J. May 18, 2005) (granting a motion for severance because, *inter alia*, the crimes were of varying natures and explaining that the mere fact "[t]hat the same participants were involved in crimes of a separate nature, however . . . is not

---

[1] As discussed further below, the Government's broad description of the "common" illicit operation as an "enterprise to defraud HUD in connection with the [Woodpile Contract]," (Dkt. No. 56 at 3), does not pass muster under the Rule 8(b) analysis.

sufficient to connect otherwise distinct crimes."); *United States v. Jawara*, 474 F.3d 565, 574 (9th Cir. 2007) (explaining that, to establish a common scheme under Rule 8, the offenses must have more than a "mere thematic similarity" and finding no common plan or scheme because the offenses charged involved "very different acts"); *cf. Green*, 563 F. App'x at 917 (3d Cir. 2014) (finding separate offenses were of a similar nature because they were all violent armed robberies).

Third, there is a lack of common participants between the alleged schemes. The Indictment identifies one person—Individual One—who allegedly interacted with both Davidson Charlemagne and Richardson. For Davidson Charlemagne, the Indictment alleges that he and Individual One were professionally acquainted for a number of years. (Dkt. No. 1 ¶ 7). Davidson Charlemagne allegedly reached out to Individual One to encourage him to bid on the Woodpile Contract, offering to work as the subcontractor on the project. *Id.* ¶¶ 7-8. Individual One allegedly agreed to this arrangement and submitted a bid for the Woodpile Contract on behalf of his company, ISG, with Davidson Charlemagne's company, D&S Trucking, as the subcontractor. *Id.* ¶ 9. As for Richardson, the Indictment alleges that he pursued a business relationship with Individual One during the bid process for, and performance of, the Woodpile Contract. *Id.* ¶ 34. The Indictment further alleges that, in February 2022, Individual One paid Richardson $107,000. *Id.* ¶ 33.

While the allegations in the Indictment clearly associate Individual One with both Davidson Charlemagne and Richardson, the Indictment falls short of alleging that Individual One was a participant in either the Charlemagnes' scheme or Richardson's scheme. Individual One is not alleged to have authorized, known about, or participated in Davidson Charlemagne's allegedly fraudulent submissions to VIHFA or alleged overbilling practices, or the Charlemagnes' alleged money laundering scheme. *See, e.g.,* (Dkt. No. 1 ¶¶ 10-12, 22-28). In fact, the Indictment alleges

14

that Davidson Charlemagne, rather than Individual One, prepared ISG's bid to VIHFA. *Id.* ¶ 13. Similarly, there is no allegation that Individual One knew about Richardson's alleged participation in the bid selection process for the Woodpile Contract, and thus the Court cannot reasonably infer that he knew that his alleged business relationship and eventual payment to Richardson constituted a criminal conflict of interest for Richardson. *See, e.g., id.* ¶¶ 9-10, 33-34. Further, Individual One is not alleged to have committed any of the various offenses allegedly committed by the Charlemagnes and Richardson. Accordingly, the Court finds that the Indictment does not allege that Individual One was a common participant between the Charlemagnes' and Richardson's alleged schemes. *See Rallo*, 2022 U.S. Dist. LEXIS 164680, at *8 (finding joinder was inappropriate because, *inter alia*, one defendant was only alleged to have participated in his own crime and was not alleged to have participated in his co-defendant's separate offense).

The Court recognizes that there is temporal proximity between the alleged schemes, as the Indictment alleges that they began around the same time period. *See* (Dkt. No. 1 ¶¶ 40, 43). But "a close temporal relationship is not, in and of itself, a sufficient condition for joinder." *Jawara*, 474 F.3d at 575. In light of the lack of mutual awareness, factual connections, or common participants between the Charlemagnes' and Richardson's alleged schemes, as well as the varying nature of the alleged offenses, the Court finds that the Indictment does not allege that the Charlemagnes and Richardson were engaged in a common illicit enterprise.

The Government contends that Defendants participated in a common scheme[2] because their offenses were "integral to one another." (Dkt. No. 56 at 5). Separate offenses may constitute a

---

[2] In support of its position, the Government cites several cases where courts have found joinder appropriate in what the Government believes are similar factual situations. (Dkt. No. 56 at 7-9). However, each of the cases cited by the Government is distinguishable from the instant matter.

common scheme if they are "integral to one another." *Lacerda*, 958 F.3d at 224. The Government asserts that the schemes here were integral to each other because "no violation of federal law would have occurred, but for Richardson using his authority to award the contract to the Charlemagnes." (Dkt. No. 56 at 4-5).

It is true that, based on the allegations in the Indictment, Richardson's award of the Woodpile Contract to ISG and D&S Trucking was integral to Davidson Charlemagne's alleged overbilling of labor costs and the Charlemagnes' alleged money laundering. But the award of the contract was not integral to every offense levied against the Charlemagnes. Specifically, in Count II, Davidson Charlemagne is charged with wire fraud in connection with the electronic submission of documents to VIHFA on or about June 8, 2020. (Dkt. No. 1 ¶¶ 11, 40). Richardson did not award the Woodpile Contract until January 2021. *Id.* ¶ 21. Thus, a "violation of federal law" (Dkt. No. 56 at 4), allegedly occurred over seven months *before* Richardson was alleged to have used his authority to award the contract to the Charlemagnes. As such, the award of the Woodpile

---

First, in *United States v. Riley*, 621 F.3d 312, 334 (3d Cir. 2010), the two defendants were in a joint land fraud scheme. One of the defendants was also charged with tax fraud, which arose out of the joint land fraud. The court deemed all of the offenses properly joined because the offenses were all part of a common scheme or arose out of the common scheme. Second, in *United States v. Rohlsen*, 174 F.R.D. 52, 55 (D.V.I. 1997), all of the defendants were charged with a conspiracy and certain defendants were charged with a separate offense that was the direct result of the conspiracy. The court similarly deemed these offenses properly joined because all of the offenses were related to the common scheme. These holdings are inapposite here, where Defendants are not charged with a conspiracy and, for all of the reasons discussed above, are not otherwise alleged to have participated in a common scheme.

Third, in *United States v. Rickey*, 457 F.2d 1027 (3d Cir. 1972), one defendant challenged his joinder with another defendant with whom he was not jointly indicted on any count. The court nonetheless found joinder was warranted because both defendants, albeit charged in separate counts of the indictment, were alleged to have committed the exact same offense—interstate transportation of forged travelers' checks that had been stolen during the same weekend from the same store. This holding too is inapposite here where the Charlemagnes and Richardson are charged with crimes of varying natures.

Contract—and any crimes Richardson may have committed in connection therewith—was not integral to the wire fraud charge.

Moreover, to establish that a group of defendants are engaged in a common illicit enterprise on the grounds that the alleged offenses are "integral to one another," both sets of offenses must be a but-for cause of each other. *See Lacerda*, 958 F.3d at 224 (suggesting that, to establish a transactional nexus on this basis, the charges must be integral to each other and that it is not sufficient for only one charge to be integral to another charge if the reverse is not true). Here, none of the offenses committed by the Charlemagnes—the various alleged false submissions to VIHFA and the alleged money laundering—are a "but for" cause of Richardson's alleged offenses. Under the allegations in the Indictment, Richardson's scheme, involving the alleged business relationship with Individual One and the offenses arising therefrom, operated completely independently from the Charlemagnes' alleged offenses. In other words, even if the Charlemagnes committed no offenses, the Indictment could still allege that Richardson had a criminal conflict of interest and that he made a material false statement. Thus, the Charlemagnes' alleged scheme and Richardson's alleged scheme were not "integral to one another" such that they constituted a common illicit enterprise.

The Government also argues that a common illicit enterprise exists because both alleged schemes involved fraud related to the Woodpile Contract, thus rendering the Woodpile Contract the requisite "transactional nexus" in this case. (Dkt. No. 66 at 5). Such an argument paints with too broad a brush and belies the plain language of Rule 8(b). Joinder is permissible only where multiple defendants are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, *constituting an offense or offenses*," Fed. R. Civ. P. 8(b) (emphasis added), and not where multiple defendants merely participated in the same *transaction*. While the

Indictment alleges that the Charlemagnes and Richardson committed financial crimes generally related to their participation in the Woodpile Contract, this does not mean they participated in a common *illicit* enterprise. *See Chierchio*, 2022 U.S. Dist. LEXIS 30758, at *12 (rejecting the government's attempt to establish a common scheme merely because the defendants sought to "criminally enrich themselves through the same person"); *see also Rajaratnam*, 753 F. Supp. 2d at 311 (finding an allegation that "both defendants separately conspired to commit the same offense" insufficient to warrant joinder); *United States v. Jordan*, 629 F. Supp. 3d 49, 58 (E.D.N.Y. 2022) (granting request for severance and explaining that "the fact that the conspiracies involved the same type of conduct demonstrates only that they had similar purposes—not a single, shared purpose"). Here, where the Indictment merely alleges that the Charlemagnes and Richardson separately conspired to commit different offenses, joinder is inappropriate, notwithstanding that they all participated in the Woodpile Contract.

      For all of the forgoing reasons, the Court concludes that Defendants have met their burden of demonstrating that Counts I, II, and III of the Indictment as pleaded do not constitute the same unlawful series of acts or transactions as Counts IV and V of the Indictment. Accordingly, pursuant to Rule 8(b), joinder of the charges against the Charlemagnes and the charges against Richardson is not permissible. Defendants' request for severance will therefore be granted.

## IV.    CONCLUSION

In view of the foregoing, Defendants' Motions to Sever will be granted. The Court will sever the charges against Davidson Lee Charlemagne and Sasha Charlemagne from the charges against Darin Richardson.

An appropriate Order accompanies this Memorandum Opinion.

Date: September 18, 2024               _____/s/_____
                                        WILMA A. LEWIS
                                        District Judge